IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRIME MECHANICAL SERVICE, INC., <br> Plaintiff, <br> v. <br> FEDERAL SOLUTIONS GROUP, INC., et al., <br> Defendants. | Case No. 18-cv-03307-MMC <br><br> **ORDER GRANTING DEFENDANT INDEMNITY COMPANY OF CALIFORNIA'S MOTION TO DISMISS; DISMISSING SECOND CAUSE OF ACTION WITHOUT FURTHER LEAVE TO AMEND** <br><br> Re: Dkt. No. 29 |

Before the Court is defendant Indemnity Company of California's ("ICC") Motion to Dismiss, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and filed September 14, 2018. Plaintiff Prime Mechanical Service, Inc. has filed opposition, to which ICC has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

## BACKGROUND[2]

On March 6, 2017, defendant Federal Solutions Group, Inc. ("FSG") "was awarded a prime contract [("the Contract")] by the United States of America, acting by and through the General Services Administration" ("GSA"), which "required FSG to design and install stair pressurization fans" and "a new heating, ventilation, and air conditioning [("HVAC")] system" for the Frank Hagel Federal Building ("the Project"). (See FAC ¶ 7.)

On March 28, 2017, "FSG, as principal," and ICC, "as surety, . . . executed and

---

[1] By order filed October 15, 2018, the Court took the motion under submission.

[2] The following facts are taken from the First Amended Complaint ("FAC") and the exhibits attached thereto.

United States District Court
Northern District of California

delivered to GSA a Payment Bond pursuant to 40 U.S.C. §3131 and §3133 . . . [,] whereby ICC guaranteed the payment to all entities supplying labor, services and material in the prosecution of the work provided for in the Contract." (See id. ¶ 8; see also id. Ex. A at 1.)

On March 30, 2017, "FSG entered into a subcontract agreement with [plaintiff]," whereby plaintiff "agreed to perform the HVAC work" required under the Contract "for the sum of $93,700." (See id. ¶ 10; see also id. Ex. B at 2.)

Plaintiff alleges that, "commencing on or after March 30, 2017 and continuing through August 15, 2017," plaintiff and its sub-designer "prepared the new HVAC design for the [P]roject, and submitted the document to FSG for submission to the GSA for review and approval." (See id. ¶ 12.) In addition, plaintiff alleges, it provided several "on-site" services in connection with the Project.[3] (See id. ¶ 12.)

Plaintiff further alleges that "on or about August 30, 2017," it "submitted to FSG an invoice . . . in the amount of $34,424.28" ("the Invoice") (see id. ¶ 13; see also id. Ex. C), which was "due and payable 30 days after FSG's receipt of the document," specifically, on September 30, 2017 (see FAC ¶ 13). According to plaintiff, the Invoice is "erroneous[ly] dated May 15, 2017, since [plaintiff] had failed to change the date of a prior invoice." (See id.) Plaintiff alleges that "more than 90 days has now elapsed" (see id. ¶ 19) since payment on the Invoice was due and that "FSG has refused to pay [plaintiff] for the services rendered" for the Project under the Contract (see id.).

Based on the above, plaintiff asserts against ICC a claim under 40 U.S.C. § 3133(b) ("Miller Act claim"), by which it seeks to recover on the Payment Bond the amount due under the Invoice.

**LEGAL STANDARD**

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged

---

[3] There is no allegation as to when such "on-site" services were provided.

2

1 under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

**DISCUSSION**

By order filed August 15, 2018, the Court granted ICC's motion to dismiss the Miller Act claim asserted against it in plaintiff's initial complaint. As set forth in said order, the Court, noting "the Complaint allege[d] plaintiff performed work within the statutory period" (see Order Granting Defendant Indemnity Company of California's Motion to Dismiss ("August 15 Order") at 1:25-26), found the claim was not "subject to dismissal as time-barred" (see id. at 1:17-18). The Court did, however, find the claim nonetheless subject to dismissal for a different reason, specifically, because plaintiff "failed . . . to show it 'furnished labor or material'" as required under 40 U.S.C. § 3133(b)(1). (See id. at 1:27-28; see also id. at 2:2-5 (noting plaintiff only "allege[d] it provided 'design

3

services'"; finding "such work does not constitute 'labor' under the [Miller] Act").)

By the instant motion, ICC seeks an order dismissing plaintiff's Miller Act claim as alleged in the FAC.

At the outset, ICC, again relying on the date of the Invoice, contends plaintiff's Miller Act claim is time-barred. See 40 U.S.C. 3133(b)(4) (providing Miller Act claim "must be brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action"). As discussed below, the Court again disagrees.

As set forth in the August 15 Order, although the Invoice is dated more than a year before plaintiff filed the instant action (see FAC Ex. C), plaintiff alleges it performed work on the Project within the statutory period (see FAC ¶ 12 (alleging "on or after March 30, 2017 and continuing through August 15, 2017," plaintiff "prepared the new HVAC design for the [P]roject"). In addition, plaintiff has endeavored to explain in the FAC the reason for the discrepancy in the dates. (See id. ¶ 13) (alleging use of "erroneous" date was due to plaintiff's "fail[ure] to change the date of a prior invoice".) Lastly, although, as ICC points out, plaintiff, despite having been advised to do so in the August 15 Order, has not clarified whether the Invoice sought payment for work that was to be, rather than had been, performed,[4] nor has plaintiff pleaded the dates on which any "on-site" services were provided, such ambiguities do not establish "beyond doubt that . . . plaintiff can prove no set of facts that would establish the timeliness of the claim." See Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1207 (9th Cir. 1995).

Next, defendant contends plaintiff's Miller Act claim is subject to dismissal because plaintiff has again failed to allege it "'furnished labor or material in the prosecution of work' provided for in [the] [C]ontract." (See Mot. at 5:17-18.) As discussed below, the Court agrees.

---

[4] For example, plaintiff does not allege whether it submits invoices on a weekly or monthly basis, or otherwise in accordance with any other practice or schedule.

4

A civil action may be brought under the Miller Act by any "person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished" but "has not been paid in full within 90 days after the day on which the person did or performed the last of the labor or furnished or supplied the material for which the claim is made." See 40 U.S.C. § 3133(b). As used in the Miller Act, the term "labor" primarily encompasses services involving "manual labor," see United States ex. rel. Shannon v. Fed. Ins. Co., 251 Fed. Appx. 269, 272 (5th Cir. 2007), or "physical toil," see United States ex. rel. Barber-Colman Co. v. United States Fid. & Guar. Co., No. 93-1665, 1994 WL 108502, at *3 (4th Cir. 1994). Although "work by a professional, such as an architect or engineer" generally does not constitute "labor" within the meaning of the Miller Act, see United States ex. rel. Naberhaus-Burke, Inc. v. Butt & Head, Inc., 535 F. Supp. 1155, 1158 (S.D. Ohio 1982), some courts have found "certain professional supervisory work is covered by the Miller Act, namely, skilled professional work which involves actual superintending, supervision, or inspection at the job site" see United States ex. rel. Olson v. W.H. Cates Constr. Co., 972 F.2d 987, 990-92 (8th Cir. 1992) (internal quotation and citation omitted) (citing, as examples, "architect . . . who actually superintends the work as it is being done" and "project manager . . . [who] did some physical labor at the job site" (internal quotation and citation omitted)).[5]

Here, plaintiff alleges it "attended 4 or 5 on-site field meetings . . . to determine the location and layout of the new equipment, . . . performed on-site field coordination with the existing equipment, . . . took on-site field measurements for fabrication of duct work and support hangers, . . . scheduled the start date and while on-site planned site access and crane locations, prepared product and equipment submittals, and obtained security passes." (See FAC ¶ 12.) The above-listed services are, however, "clerical or administrative tasks which, even if performed at the job site, do not involve the physical

---

[5] Plaintiff, despite having been given the opportunity to do so (see August 15 Order at 2:11-15), does not allege that it or any of its employees performed any such superintending, supervision, or inspection.

5

toil or manual work necessary to bring them within the scope of the Miller Act." See United States ex. rel. Constructors, Inc. v. Gulf. Ins. Co., 313 F. Supp. 2d 593, 597 (E.D. Va. 2004) (holding subcontractor did not furnish "'labor' within the contemplation of the Miller Act" where subcontractor's duties entailed paying invoices, reviewing subcontractor and vendor proposals, supervising the hiring of site personnel, and providing site coordination services). Although taking "on-site field measurements" (see FAC ¶ 12) may have involved some minor physical activity, it does not amount to the physical "toil" required by the Miller Act. See Constructors, 313 F. Supp. 2d at 597; cf. Am. Surety Co. v. United States ex. rel. Barowagee Labs., Inc., 76 F.2d 67, 67-68 (5th Cir. 1935) (holding plaintiff supplied "labor" when its employees took, prepared, and tested samples of gravel for road construction project because such tasks required employees to shovel, transport, dry, sift, separate, and weigh gravel, sand, and clay).

Accordingly, plaintiff's Miller Act claim against ICC will be dismissed for failure to plead the requisite furnishing of "labor or material." See 40 U.S.C. § 3133(b).

## CONCLUSION

For the reasons stated above, defendant ICC's motion is hereby GRANTED and the Second Cause of Action is hereby DISMISSED without further leave to amend.

**IT IS SO ORDERED.**

Dated: November 28, 2018

MAXINE M. CHESNEY
United States District Judge