IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRIME MECHANICAL SERVICE, INC., <br> Plaintiff, <br> v. <br> FEDERAL SOLUTIONS GROUP, INC., et al., <br> Defendants. | Case No. 18-cv-03307-MMC <br><br> **ORDER DENYING DEFENDANT INDEMNITY COMPANY OF CALIFORNIA'S MOTION FOR ATTORNEY'S FEES** <br><br> Re: Dkt. No. 42 |

Before the Court is defendant Indemnity Company of California's ("ICC") "Motion for Attorney's Fees," filed December 13, 2018, by which ICC seeks the fees it incurred in defending an action brought against it by plaintiff Prime Mechanical Service, Inc. ("Prime") under the Miller Act, 40 U.S.C. §§ 3131, 3133. Prime has not filed a response. Having read and considered the papers filed in support of the motion, the Court rules as follows.[1]

**PROCEDURAL AND LEGAL BACKGROUND**

The Miller Act "requires a Government contractor to post a surety bond" to "protect those who supply labor or materials to a contractor on a federal project," see F.D. Rich Co. v. U.S. ex rel. Indus. Lumber Co., Inc., 417 U.S. 116, 118, 121–22 (1974), and provides that any person who has supplied such labor or materials but "has not been paid in full . . . may bring a civil action on the payment bond for the amount unpaid," see 40 U.S.C. § 3133(b)(1).

---

[1] By order filed January 15, 2019, the Court vacated the hearing scheduled for January 24, 2019. (See Order Vacating Hr'g on Mot., filed Jan. 15, 2019, at 1.)

On June 4, 2018, Prime, a subcontractor on a federal construction project located in Richmond, California, filed a "Complaint for Breach of Contract and on Miller Act Payment Bond" ("Complaint"). (See Compl., filed Jun. 4, 2018, at 1:11–13.) Prime alleged therein that: (1) defendant Federal Solutions Group ("FSG") was awarded a prime contract by the United States for the above-referenced project; (2) FSG, pursuant to the Miller Act, obtained the requisite payment bond for the contract, with ICC serving as the surety on the bond; (3) Prime entered into a subcontract with FSG to perform design and installation work for the project (hereinafter, "Subcontract"); and (4) FSG breached the Subcontract by failing to pay Prime for the "design services" it provided. (See id. ¶ 14.)[2]

Based on the above allegations, Prime brought two causes of action, the first against FSG and the second against ICC. In the First Cause of Action, Prime, relying on the Subcontract, asserted against FSG a state law claim for breach of contract and sought attorney's fees "[p]ursuant to the terms of said agreement." (See id. ¶ 16.) In the Second Cause of Action, Prime, relying on the Miller Act payment bond, asserted a claim against ICC for payment of the above-referenced design services and sought attorney's fees "[p]ursuant to the terms of said bond." (See id. ¶ 23.)

On July 2, 2018, ICC moved to dismiss the sole count against it, the Second Cause of Action, on two grounds: (1) Prime's "design professional work [did] not constitute labor or materials for purposes of" the Miler Act (see Mot. to Dism. Compl., filed Jul. 2, 2018, at 5:10–11), and, consequently, was "not recoverable under a Miller Act payment bond" (see id. at 6:17–18); and (2) Prime's suit was time-barred by the Miller Act's statute of limitations. On August 15, 2018, the Court granted the motion; specifically, the Court agreed Prime's design work did "not constitute 'labor' under the Act" (see Order Gr. Def. ICC's Mot. to Dism., filed Aug. 15, 2018, at 2:4–5), but granted Prime leave to amend to allege the nature of the "on-site" work to which Prime had

---

[2] The Court has previously set forth in greater detail the factual allegations on which Prime's claims against FSG and ICC were based. (See Order Gr. Def. ICC's Mot. to Dism., filed Nov. 28, 2018 ("Dismissal Order"), at 1–2.)

2

referred in its opposition (see id. at 2:11).

On August 31, 2018, Prime filed its First Amended Complaint ("FAC"), realleging both causes of action and adding allegations pertaining to said on-site work. Thereafter, asserting the same two grounds as in its prior motion, ICC moved to dismiss the FAC. (See Mot. to Dism. FAC, filed Sept. 14, 2018, at 3:10–15.) On November 28, 2018, the Court granted ICC's motion, again dismissing, in this instance without leave to amend, for "failure to plead the requisite furnishing of 'labor or material.'" (See Dism. Order at 6:13–14.)

By the instant motion, ICC seeks an award of attorney's fees, in the amount of $15,130, "incurred in the defense of this action." (See Mot. at 1:21–22, 5:19.)

**DISCUSSION**

In cases brought under the Miller Act, "federal, not state, law . . . govern[s] the award of [attorney's] fees," see United States ex rel. Reed v. C.E. Callahan, 884 F.2d 1180, 1185 (9th Cir. 1989), and, consequently, the "American Rule of fees applies," see id. Pursuant to said rule, attorney's fees "are available only when authorized by statute or an enforceable contract or, in the absence of either of these sources, when the losing party has acted in bad faith or the successful party has conferred a substantial benefit on a class of individuals." See id. (noting "the Miller Act does not itself provide for fees").

In support of the instant motion, ICC, relying on an attorney's fees provision in the Subcontract and on California Civil Code § 1717, contends ICC, "as the prevailing party, is entitled to an award of its attorney's fees." (See Mot. at 4:7–8.)[3]

The above-referenced contractual provision states: "FSG shall . . . have the right to . . . recover from Subcontractor [Prime] . . . all reasonable attorneys' fees suffered or incurred by FSG or by reason of or as a result of Subcontractor's default or FSG's actions hereunder." (See FAC Ex. B (Subcontract) ¶ 15.) The Subcontract contains no provision

---

[3] ICC does not invoke "bad faith" or "substantial benefit" as a basis for an award, see Reed, 884 F.2d at 1285, and the Court finds neither is applicable in the instant case.

United States District Court<br>Northern District of California

1  for an award of fees to anyone other than FSG.

2  Where, as here, the United States is not a party to the subcontract, state law
3  applies to the interpretation thereof, and, accordingly, the Court applies California law.[4]
4  See Reed, 884 F.2d at 1182, 1185 (holding "state law controls the interpretation of Miller
5  Act subcontracts to which the United States is not a party"; applying § 1717 to contract
6  between subcontractor and prime contractor). Section 1717 provides:

> In any action on a contract, whether the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees . . . .

Cal. Civ. Code § 1717(a).

Relying thereon, ICC, without further elaboration, states, "[j]ust as Prime sought fees in its [FAC], [d]efendant [ICC] also seeks attorney's fees based on the same contract." (See Mot. at 4:6–7.) Although, as ICC asserts, § 1717 makes unilateral attorney's fees provisions reciprocal, see Reed, 884 F.2d at 1185 (holding § 1717's "reciprocity rule converts a one-way attorneys' fees clause into a two-way avenue of opportunity"), such reciprocity does not support ICC's claim to fees.

First, application of the reciprocity provision to the Subcontract would convert the one-way provision entitling FSG to attorney's fees into a two-way provision entitling Prime to such fees, a result in no manner of assistance to ICC. See id. (holding subcontractor entitled to attorney's fees notwithstanding subcontract provision "expressly limit[ing] the availability of fees to the [prime] contractor"; explaining § 1717 "makes the clause as applicable to [the subcontractor] as it is to [the prime contractor]"). Second, and most importantly, ICC cannot rely on the attorney's fees provision in the Subcontract because

---

[4] The Subcontract contains a choice-of-law provision stating said contract "shall be governed by the laws of the state where FSG's office address is located" (see FAC Ex. B ¶ 36), and identifies FSG's address as "2440 Camino Roman Suite 343[,] San Ramon CA" (see id. at 1).

1  ICC is not a party to that contract, which is, as noted, between Prime and FSG. (See
2  FAC Ex. B at 1); see also Greg Opinski Constr., Inc. v. Braswell Constr., Inc., 2012 WL
3  10513, at *3 (E.D. Cal. Jan. 3, 2012) (holding surety not entitled to attorney's fees from
4  subcontractor under subcontract providing for payment of fees to prevailing party;
5  explaining surety was "not a party to that contract" and did not "otherwise demonstrate[]
6  that it [was] entitled to recover under the terms of the subcontract"); United States ex rel.
7  Renegade Equip., LLC v. Western Surety Co., 2009 WL 2143637, at *1 (D. Alaska Jul.
8  15, 2009) (holding, where surety was not signatory to subcontract providing for attorney's
9  fees to prevailing party, surety not entitled to award of fees from subcontractor).

Moreover, although not set forth in ICC's argument, to the extent ICC may be asserting reciprocity based on a subcontractor's entitlement to attorney's fees from a surety where such subcontractor prevails in an action against the prime contractor, see, e.g., U.S. ex rel. Sherman v. Carter, 353 U.S. 210, 220–21 (1957) (holding Miller Act "makes the surety liable on its payment bond" for defaulting contractor's obligations, including attorney's fees, under labor agreement), any such reliance is misplaced. Significantly, the purpose of the Miller Act is "to protect those whose labor and materials go into public projects." See id. at 216–17 (holding Miller Act "is highly remedial in nature"; explaining "[t]he essence of its policy is to provide a surety who, by force of the Act, must make good the obligations of a defaulting contractor to his suppliers of labor and material"). Consistent therewith, the bond covers "the total amount payable by the terms of the contract." See 40 U.S.C. § 3131(b)(2). Nothing in the Act suggests it is intended to protect, or ensure any payment to, the surety, and ICC provides no authority even suggesting such a policy exists.

Lastly, to the extent ICC may be contending it stands in the shoes of FSG, any such argument likewise is unavailing. As noted, Prime brought its claim against ICC pursuant to the payment bond, which does not contain an attorney's fees provision (see FAC Ex. A), and ICC has not cited to any statute or case holding, where a prime contractor prevails on a subcontract, the surety is entitled to the prime contractor's

attorney's fees. Indeed, to so hold would seem particularly inappropriate where, as here, the surety defends solely on the claim brought against itself under the Miller Act, not on the claim brought against the prime contractor for breach of contract. In any event, even if such an argument had merit, it is unavailing here because no one has prevailed against Prime on the Subcontract. FSG, although served with the summons and Complaint, never appeared in the instant action, and the Court, following its order dismissing the claim against ICC (see Dism. Order at 6:16–17), declined to exercise supplemental jurisdiction over the claim against FSG. (See Order Dism. First Cause of Action, filed Nov. 28, 2018, at 2:2–3) (dismissing claim against FSG "without prejudice to [Prime's] refiling [it] in state court").)

In sum, ICC "has not established entitlement to attorney's fees." See Greg Opinski Constr., 2012 WL 10513, at *3.

**CONCLUSION**

For the reasons stated above, ICC's Motion for Attorney's Fees is hereby DENIED.

**IT IS SO ORDERED.**

Dated: June 10, 2019

MAXINE M. CHESNEY
United States District Judge

6